United States District Court
Southern District of Texas
**ENTERED**
April 17, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ENRIQUE GONZALEZ, JR., | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:22-CV-00195 |
| | § | |
| BRYAN COLLIER - TDCJ DIRECTOR, *et* | § | |
| *al.*, | § | |
| | § | |
| Respondents. | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner Enrique Gonzalez, Jr., is an inmate in the Texas Department of Criminal Justice and is currently incarcerated at the McConnell Unit in Beeville, Texas. Gonzalez filed a counseled habeas corpus petition pursuant to 28 U.S.C. § 2254 on August 18, 2022. (D.E. 1, 2). Gonzalez raises claims regarding ineffective assistance of counsel during his state court plea negotiations and trial. Respondent filed a motion to dismiss contending that the § 2254 petition is untimely, to which Gonzalez has responded. (D.E. 12, 15). As discussed more fully below, it is respectfully recommended that Respondent's motion to dismiss (D.E. 12) be **GRANTED** and Gonzalez's § 2254 petition be **DISMISSED** as untimely. It is further recommended that a Certificate of Appealability ("COA") be **GRANTED**.

## I.   JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. § 1331 and venue is appropriate because Gonzalez was convicted in Duval County, Texas.  28 U.S.C. § 2254(a); 28 U.S.C. § 124(b)(6); *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000).

## II.   BACKGROUND

### a.   Petition and Claims

In his petition and memorandum of law, Gonzalez first contends that he received ineffective assistance of counsel during the plea stage of his criminal proceedings.  (D.E. 1 at 6, D.E. 2 at 16-22).  Specifically, he alleges that trial counsel incorrectly advised him to reject a 10-year plea offer because he would most likely be acquitted due to a lack of DNA evidence and, even if he was convicted, he would be eligible for probation.  (D.E. 1 at 6; D.E. 2 at 17-22).  This advice was incorrect because Texas law does not require DNA evidence to support a conviction for indecency with a child, and a prior conviction mandated a life sentence on conviction.  (*Id.*).

Second, Gonzalez contends that he received ineffective assistance at trial when trial counsel failed to object when: (1) the trial court arraigned him in front of the jury; (2) the state made an inflammatory and improper opening statement; (3) a police witness offered an opinion on the victim's credibility; (4) the state included a personal opinion of the victim's credibility in closing; (5) the state accused trial counsel of improper motivations; (6) the trial court did not inform counsel of a jury note reflecting a deadlock; (7) the court

read an *Allen*[1] charge to the jury without counsel having reviewed the charge with Gonzalez; and (8) the court failed to reduce the *Allen* charge to writing.  (D.E. 1 at 8; D.E. 2 at 23-32).  He also contends that counsel failed to preserve jury misconduct error during a hearing on a motion for new trial.  (D.E. 1 at 8; D.E. 2 at 30-31).

As to timeliness, Gonzalez states only that he exhausted his remedies by filing a state habeas application and that this application was inexplicably denied by the Texas Court of Criminal Appeals ("TCCA") based on the doctrine of laches.  (D.E. 1 at 14-15; D.E. 2 at 9-15).

### b.    State Court Records

In January 2012, Gonzalez was charged in an indictment with two counts of indecency with a child.  (D.E. 11-4 at 6).  In July 2013, he was convicted by a jury of both counts and sentenced to life imprisonment.  (*Id.* at 123).

On December 10, 2014, the Fourth Court of Appeals of Texas affirmed Gonzalez's conviction and sentence on direct appeal.  (D.E. 11-21 at 1-9).  Among other claims, the court first rejected Gonzalez's claim that the trial court erred in denying his motion for a new trial based on juror misconduct.  (*Id.* at 2-3).  The court noted that the record showed conflicting evidence regarding whether the alleged misconduct occurred.   (*Id.* at 3). Second, the court rejected Gonzalez's claim that the trial court did not inform counsel of a jury note reflecting a deadlock, noting that trial counsel conceded at oral argument that he was present when the trial court responded to the note and never objected to the court's

---

[1] *Allen v. United States*, 164 U.S. 492 (1896).

*Allen* charge. (*Id.* at 6-7). Finally, the court rejected Gonzalez's contention that his sentence was improperly enhanced with a mandatory life sentence due to a prior conviction. (*Id.* at 8-9). Gonzalez subsequently filed a petition for discretionary review ("PDR") with the TCCA, which the TCCA refused on April 1, 2015. (*See* D.E. 11-26 at 5); *Gonzalez v. State*, No. 04-13-00708-CR, 2014 WL 6979289 (Tex. App. Dec. 10, 2014) (noting in the caption that the PDR was refused). Gonzalez did not file a petition for a writ of certiorari with the United States Supreme Court.

On July 19, 2019, Gonzalez filed an application for a writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure. (D.E. 11-36 at 206-81). He raised the same claims as in his present § 2254 petition. (*Id.* at 211-14).

In support of his application, Gonzalez submitted his own affidavit, in which he stated the following. His trial attorneys informed him that the state offered a 10-year plea deal. (*Id.* at 282). However, counsel Charles Barrera recommended that he reject the plea deal because he believed that the state's evidence was merely hearsay and that Gonzalez was likely to be acquitted. Moreover, Barrera believed that even if Gonzalez was convicted, he could get probation. Gonzalez had a prior case from 1996 in which he received probation for aggravated sexual assault of a child. (*Id.*). Gonzalez's trial attorneys did not tell him that he would receive a mandatory life sentence because of this prior conviction. (*Id.* at 283). If they had, he would have taken the plea offer. He also would have taken the plea offer if his attorneys had explained to him that DNA evidence was not required to obtain a conviction. (*Id.*).

4

Gonzalez also submitted an affidavit from Barrera, who stated the following. He knew that a prior conviction for aggravated sexual assault of a child would result in a mandatory life sentence, but he mistakenly believed that this would not apply to Gonzalez's prior conviction because he was placed on probation and the conviction was not final. (*Id.* at 284). The state had previously offered a 10-year plea deal, but Barrera expressed confidence in obtaining a more favorable verdict and thought acquittal was a strong possibility, and Gonzalez relied on this advice to reject the plea deal. (*Id.*).

At a hearing on his application, Gonzalez testified that the state offered a 10-year plea deal that it then lowered to 5 years. (D.E. 11-27 at 28). He acknowledged that both Barrera and the state prosecutor did not remember a 5-year offer. (*Id.*). Barrera advised Gonzalez that he could receive probation even if he was convicted, and given his previous experience with probation, Gonzalez believed that was something he could manage. (*Id.* at 29-31). Barrera also advised him that they had a very good chance of winning at trial because the state did not have any DNA evidence. (*Id.* at 31). Gonzalez relied on Barrera's advice to reject the plea deal and go to trial. (*Id.* at 31-32). He would have taken the plea deal if he had known that he was not eligible for probation and that the state did not need DNA evidence to convict him. (*Id.* at 32-33).

Barrera testified that the state initially offered a 20-year plea deal but reduced it to 10 years immediately before jury selection. (*Id.* at 45). He reviewed the offer with Gonzalez, who did not want to take it. (*Id.* at 46). Gonzalez felt that he was innocent and was not going to go to prison for something he did not do. (*Id.* at 47). Barrera felt fairly

5

confident that they could obtain a verdict of not guilty at trial. (*Id.*). He was also hopeful that Gonzalez could receive probation even if he was convicted. (*Id.* at 48). However, his conversations with the state made him realize that probation was not an option, and Gonzalez also knew that before jury selection. (*Id.* at 48-49). Barrera acknowledged that the record showed that he filed an application for community supervision on the day the trial started. (*Id.* at 50-51). He also acknowledged that he was incorrect when he advised Gonzalez that he had a chance of probation and that it was not a strategic decision. (*Id.* at 51-52). He became aware that Gonzalez was subject to mandatory life before jury selection, but continued to argue against that throughout the trial and appeal. (*Id.* at 53). He did not think his confidence regarding an acquittal was misplaced, as shown by the jury being hung for more than a day. (*Id.* at 54). Barrera remembered that Gonzalez was very set in his position that he was innocent and that he was going to trial. (*Id.* at 57). Knowing the jury's ultimate verdict and the mandatory life sentence, Barrera would recommend taking the 10-year deal, but he did not remember if he recommended that at the time. (*Id.* at 57-58).

Following the hearing, the trial court concluded that Gonzalez had received ineffective assistance of counsel during both the plea proceedings and at trial. (*Id.* at 325-27). Accordingly, the trial court recommended that relief be granted. (*Id.* at 327). Despite the trial court's recommendation, on April 1, 2020, the TCCA denied the application in a written order, concluding that Gonzalez was barred from obtaining relief under the doctrine of laches because he waited over four and a half years before presenting his claims. (D.E.

6

11-37 at 1-2).   Gonzalez subsequently moved for reconsideration three times, but each motion was denied.  (*See* D.E.s 11-30, 11-32, 11-35).

In support of his motions for reconsideration, Gonzalez attached a new affidavit from Barrera, in which he stated the following.   (D.E. 11-31 at 16).   Following the conclusion of Gonzalez's direct appeal, Barrera agreed to find an attorney to investigate filing a habeas application.  The direct appeal ended in 2015, but due to recovery from a medical procedure and his other workload, Barrera did not contact any other lawyers until 2016.  He ultimately made contact with Gonzalez's present attorney, Danice Obregon, in August 2016.  (*Id.*).

Sandra Sanchez, Gonzalez's sister, stated the following in an affidavit.  (*Id.* at 18). Barrera told them that he would help find another attorney to pursue filing a habeas application.  (*Id.*).  He did not inform them about Obregon until August 2016, and the family began to raise funds to pay her.  (*Id.* at 19).  They gave this money to Barrera, but later found out that he had not passed it on to her, and therefore personally contacted Obregon in January 2017.  They then worked with her until she filed the state application in July 2019.  Barrera provided an affidavit, but took months to do so.  Gonzalez's other trial attorney was injured and unable to assist.  (*Id.*).

Obregon stated the following in an affidavit.  (*Id.* at 20).  She was first contacted about representing Gonzalez in 2016.  She gave Barrera a retainer quote to pass on to the family on August 23, 2016.  Ultimately, she was contacted by the family and hired in January 2017.  She worked on the case on and off until filing the state habeas application

in July 2019, along with maintaining her normal caseload and dealing with family health problems.  Barrera initially provided her an affidavit in August 2018, but it contained errors that he did not correct until February 2019.  (*Id.*).  Even this version contained errors that Barrera subsequently failed to correct.  (*Id.* at 20-21).

## III.  DISCUSSION

### a.  Arguments

In the motion to dismiss, Respondent contends that Gonzalez's claims are barred by the statute of limitations.  (D.E. 12 at 5-7).  Specifically, Respondent argues that the judgment became final on June 30, 2015, when his time to file a petition for certiorari expired, and Gonzalez had one year from that date to file a federal habeas petition.  (*Id.* at 6-7).  Respondent asserts that Gonzalez is not entitled to statutory tolling because his state habeas application was filed after the expiration of the limitations period.  (*Id.* at 7).  Respondent further argues that Gonzalez has not established that he is entitled to equitable tolling.  (*Id.* at 8-9).  Finally, Respondent argues that, to the extent that Gonzalez raises a claim that the TCCA's application of the doctrine of laches to his state habeas application was inappropriate, that claim is not cognizable on federal habeas review.  (*Id.* at 7).

Gonzalez responds that his petition is not barred by the statute of limitations because he could not have discovered the factual predicate of his claim until 2019, when trial counsel admitted his errors in an affidavit.  (D.E. 15 at 1-4).  He notes that trial counsel was also appellate counsel and, following the direct appeal, committed to finding habeas counsel.  (*Id.* at 3).  Further, Gonzalez contends that the limitations period should not begin

8

until after he exhausted his state remedies, which was not until the TCCA denied his Article 11.07 application. (*Id.* at 4-5). He asserts that, even if his petition is time-barred, equitable tolling should apply because he could not have known that counsel was ineffective before counsel discovered his own ineffectiveness, and there is a conflict between the state's lack of a deadline to file a state habeas application and the one-year time limit in federal law. (*Id.* at 5-6). Finally, he argues that the Court should review his claims regardless of whether they are time-barred because he had either no counsel or ineffective counsel during the period in which he was required to file his federal petition. (*Id.* at 7-8).[2]

      *b. Applicable Limitations Period and Statutory Tolling*

A one-year limitations period applies to an application for a writ of habeas corpus filed by a person in custody pursuant to a state court judgment. 28 U.S.C. § 2244(d)(1). The limitations period runs from the latest of either: (1) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (2) the date on which the impediment to filing an application created by state action in violation of the Constitution or laws of the United States was removed; (3) the

---

[2] Gonzalez also raises an argument regarding the ability of this Court to review his claim following the state's dismissal based on a procedural bar. (D.E. 15 at 8-13). However, the Respondent's present motion to dismiss does not seek dismissal on this ground. (*See generally* D.E. 12). In the present motion, Respondent argues only that the TCCA's application of the doctrine of laches is not reviewable in a federal habeas claim, not that it bars review of Gonzalez's underlying ineffective-assistance claims. (*Id.* at 7). To the extent that Gonzalez contends that the TCCA's application of the doctrine of laches to his state habeas application was incorrect, that claim is not cognizable on federal habeas review. *Vail v. Procunier*, 747 F.2d 277, 277 (5th Cir. 1984). Additionally, this claim is based on a defect in the application of state law and is not cognizable on federal habeas review for that reason as well. *Sharp v. Johnson*, 107 F.3d 282, 290 (5th Cir. 1997).

date on which the constitutional right asserted was initially recognized by the Supreme Court; or (4) the date on which the factual predicate of the claim presented could have been discovered through the exercise of due diligence. *Id.* § 2244(d)(1).

A conviction becomes final when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari to the Supreme Court has expired. *Roberts v. Cockrell*, 319 F.3d 690, 693 (5th Cir. 2003). Petitions for a writ of certiorari must be filed within 90 days after the entry of judgment or the denial of discretionary review. Sup. Ct. R. 13.1.

The time during which a properly filed state collateral review application is pending is not counted toward the limitations period. 28 U.S.C. § 2244(d)(2). A state habeas petition filed after the limitations period ends does not toll the limitations period under § 2244(d)(2). *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000).

Here, Gonzalez's § 2254 petition is untimely, and he has not established that he is entitled to statutory tolling. First, applying the time limit in § 2244(d)(1)(A), he had 90 days to file a petition for a writ of certiorari with the United States Supreme Court following the TCCA's refusal of his PDR on April 1, 2015. *See* Sup. Ct. R. 13.1; *Gonzalez*, 2014 WL 6979289 at *1. Because he did not file a petition for a writ of certiorari, his conviction became final at the expiration of those 90 days on June 30, 2015. Running the limitations period from the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review, his time to file a § 2254 petition expired one year later on June 30, 2016. 28 U.S.C. § 2244(d)(1)(A).

Gonzalez asserts that the limitations period should instead start on the date on which the factual predicate of the claim presented could have been discovered through the exercise of due diligence, which he contends is when trial counsel admitted his mistakes in 2019. (D.E. 15 at 1-4); 28 U.S.C. § 2244(d)(1)(D). However, this does not establish that Gonzalez could not have discovered the factual predicate of his claims earlier than counsel's affidavit through the exercise of due diligence. *See* 28 U.S.C. § 2244(d)(1)(D). First, as to his claims regarding ineffective assistance at the plea stage, Gonzalez should have been aware that counsel's advice regarding the likelihood of acquittal and the possibility of probation were possibly incorrect after he was, contrary to counsel's beliefs, convicted and sentenced to life imprisonment. On direct appeal, the Fourth Circuit Court of Appeals of Texas specifically noted that the trial court properly sentenced Gonzalez to a mandatory life sentence. (D.E. 11-21 at 8-9). Based on this ruling, Gonzalez could have discovered his claims earlier than 2019 through the exercise of due diligence because both the trial and appellate courts concluded that he was subject to a mandatory life sentence, contrary to trial counsel's prediction that he was likely to be acquitted or, even if convicted, receive probation. Because Gonzalez could have discovered the factual predicate of these claims by no later than the completion of his direct appeal, the limitations period is not changed from that provided by § 2244(d)(1)(A).

Second, as to his claims of ineffective assistance at trial, the factual predicate of his claims occurred during trial, which Gonzalez was present for. Although he may not have been able to immediately identify every error that he now claims rendered trial counsel

ineffective, that also does not mean that he could not have discovered them sooner through the exercise of due diligence as required by the statute. *See* 28 U.S.C. § 2244(d)(1)(D). Gonzalez was convicted in July 2013, lost his direct appeal in December 2014, and did not file his state court habeas application until July 2019, six years after trial counsel's errors occurred. (D.E. 11-4 at 6; D.E. 11-21 at 1-9; D.E. 112:2-cv-195

-36 at 216). The same is true of his claim regarding ineffective assistance in relation to the motion for new trial, which was decided in the immediate aftermath of trial and before Gonzalez's direct appeal. (*See, e.g.,* D.E. 11-21 at 2-3 (addressing a claim related to the motion for new trial on direct appeal)). Were the limitations period for ineffective assistance claims only to start running when trial counsel admits to making a mistake, as Gonzalez now requests, that would all but remove the statute's requirement that petitioners exercise due diligence in uncovering and raising their claims. In short, Gonzalez has not shown that he could not have discovered the factual predicate of his claims sooner through the exercise of due diligence, and therefore has not established that a later date under § 2244(d)(1)(D) is the proper starting point for the limitations period.

As to Gonzalez's argument that the limitations period should not begin until after he exhausted his state remedies because he raises ineffective-assistance claims, he has not cited any statutory language or legal authority in support of that contention. Were Gonzalez's state habeas application filed before the expiration of the limitations period, then it would have tolled the limitations period until after he exhausted his state remedies. 28 U.S.C. § 2244(d)(2). However, Gonzalez did not file his state habeas application until

July 19, 2019, over three years after the expiration of the limitations period, and it therefore does not toll the limitations period.  *Scott*, 227 F.3d at 263.

    *c.  Equitable Tolling*

The timeliness provision in § 2244(d) is also subject to equitable tolling.  *Holland v. Florida*, 560 U.S. 631, 634 (2010).  A petitioner is entitled to equitable tolling only if he can show that: (1) he has been diligently pursuing his rights; and (2) some extraordinary circumstance stood in his way.  *Id.* at 649.  Such a circumstance exists where, for example, the plaintiff was misled by the defendant about the cause of action or was otherwise prevented in some extraordinary way from asserting his rights.  *Lookingbill v. Cockrell*, 293 F.3d 256, 264 (5th Cir. 2002).  A standard claim of excusable neglect is insufficient. *Id.*  Ignorance of the law generally does not excuse prompt filing, even for a *pro se* prisoner. *Felder v. Johnson*, 204 F.3d 168, 172 (5th Cir. 2000).  The failure to satisfy the limitations period must result from "external factors" beyond the petitioner's control, and delays caused by the petitioner do not qualify.  *In re Wilson*, 442 F.3d 872, 875 (5th Cir. 2006).

The Supreme Court has held that, while some types of lawyer misconduct may warrant equitable tolling, "simple negligence" on the part of a lawyer is not an extraordinary circumstance that entitles a petitioner to equitable tolling.  *Holland*, 560 U.S. at 652-54.  In *Holland*, the petitioner's attorney filed a state habeas application with 12 days remaining on the one-year clock to file a federal habeas petition.  *Id.* at 636.  The state habeas application remaining pending for three years, during which the petitioner routinely contacted counsel and reminded him to preserve all claims for a subsequent federal habeas

petition. While his state habeas application was pending on appeal in state court, communication began to break down between the petitioner and counsel, and the petitioner requested that a new attorney be appointed. *Id.* This request was denied. *Id.* at 637. He wrote several additional letters to the court and filed a complaint against counsel with the Florida Bar Association. *Id.* Shortly after oral argument in the appeal, the petitioner contacted counsel and, in the event that the state appeal was denied, reminded him to file a federal habeas petition before time expired. *Id.* at 637-38. Counsel never responded. *Id.* at 638. The appeal was subsequently denied. *Id.*

Two months later, having never been informed that the appeal was denied, the petitioner wrote another letter to counsel regarding filing a federal petition before the expiration of the limitations period. *Id.* at 639. Nine days later, the petitioner discovered that his state appeal had been denied, and immediately prepared and submitted his own *pro se* federal habeas petition. *Id.* at 639-40. When counsel finally contacted the petitioner, he explained that he believed the one-year federal limitations period expired before he began to represent him. *Id.* at 641. Counsel was incorrect about the law. *Id.* The petitioner continued to correspond with counsel, and throughout this correspondence, the petitioner was correct about the law and counsel was incorrect. *Id.* at 641-43.

The federal district court dismissed the petitioner's habeas petition as untimely after finding that he was not entitled to equitable tolling. *Id.* at 643. The Court of Appeals affirmed, concluding that equitable tolling could not be applied in a case that involved no more than "[p]ure professional negligence" by the petitioner's attorney, which could never

constitute an extraordinary circumstance. *Id.* at 644. The Supreme Court rejected this categorical rule, finding that "serious instances of attorney misconduct" could qualify as a basis to apply equitable tolling. *Id.* at 651-52. However, the Court also reaffirmed that the circumstances of the case must be "extraordinary" and that "a garden variety claim" of attorney negligence was insufficient. *Id.*

The Court noted that counsel's simple failure to file the petition on time and lack of awareness regarding the date on which the limitations period expired were two facts that suggested simple negligence. *Id.* at 652. However, given the entirety of the facts in *Holland*, the Court remanded for further consideration of whether the petitioner was entitled to equitable tolling under this standard. *Id.* at 654. The Court noted several facts that suggested that the petitioner may be entitled to equitable tolling, including that: (1) he sent many letters to counsel that emphasized the importance of timely filing a federal petition; (2) counsel apparently did not do the research necessary to determine the proper filing date despite the petitioner's letters that actually identified the applicable legal rules; (3) counsel failed to inform the petitioner when the state appeals court decided his case, which was crucial to filing a federal petition on time; (4) counsel failed to communicate with the petitioner for years despite multiple letters and pleas that he respond; (5) the petitioner wrote numerous letters to counsel but also repeatedly contacted the state courts and state bar in an effort to have counsel removed from his case; and (6) the petitioner prepared his own federal habeas application the day he discovered that the limitations period had expired due to counsel's failure. *Id.* at 652-53.

Here, Gonzalez has not shown that he is entitled to equitable tolling because he has not shown any extraordinary circumstance that prevented him from filing his § 2254 petition earlier. *Holland*, 560 U.S. at 649. Although Gonzalez contends that the difference between the relevant limitations period, if any, applicable to state and federal habeas petitions creates a conflict, ignorance of the law does not generally excuse prompt filing. *Felder*, 204 F.3d at 172. It was nonetheless Gonzalez's responsibility to know the timeline that applies to the filing of a federal habeas petition. Similarly, excusable neglect is insufficient to establish that a prisoner is entitled to equitable tolling. *Lookingbill*, 293 F.3d at 264. Gonzalez contends that Barrera was still representing him following his direct appeal and during the initial portion of his attempt to file a habeas petition and that this excuses his delay. But as noted above, Barrera's errors were already discoverable at this point. Particularly as to Barrera's errors during the plea process, the trial court and court of appeals had already directly rejected his belief that a probationary sentence was likely by instead imposing and affirming a mandatory life sentence. While Gonzalez's decision to initially work with Barrera to obtain new counsel for his postconviction proceedings may have been excusable, it was nonetheless a decision within his control and not an extraordinary circumstance. *Wilson*, 442 F.3d at 875. It is also distinguishable from *Holland*, where the petitioner continually attempted to remove counsel. *See Holland*, 560 U.S. at 652-53. Instead, it is more analogous to *Manning v. Epps*, 688 F.3d 177, 186 (5th Cir. 2012), where the petitioner "relied on his … counsel to comply with all applicable

statute of limitations" without encouraging or otherwise inquiring about the status of the application, which the Fifth Circuit concluded did not constitute due diligence.

Additionally, even if Barrera's delay could form the basis for equitable tolling, the record shows that Gonzalez began working with new counsel by January 2017. (D.E. 11-31 at 19, 20). His state habeas application was nonetheless not filed until July 2019, almost two and a half years later. (D.E. 11-36 at 216). And while his state habeas application was denied on April 1, 2020, and the final of his three suggestions to reconsider was denied on April 19, 2022, his federal petition was not filed until nearly four months later on August 18, 2022. (D.E. 1; D.E. 11-32 at 1). Thus, even after Barrera was removed from the case, the record does not show diligence on the part of counsel or Gonzalez in submitting either his state application or his federal application. Nor does the record show that Gonzalez was continually pushing counsel to file his state application or federal petition faster, or seeking to have counsel removed, facts that the Supreme Court considered important in *Holland*. *See Holland*, 560 U.S. at 652-53.

Gonzalez's present counsel faults some of the delay on Barrera, noting that she prepared a draft of the memorandum by mid-2018 but then had to wait until August 2018 to receive an affidavit from Barrera. (D.E. 11-31 at 20). She states that this affidavit contained factual inaccuracies and she had to wait until February 2019 for a correction, and that even the corrected affidavit was not completely correct, but that Barrera never provided another and she ultimately had to submit it. (*Id.*). She also notes that she attempted to obtain an affidavit from Gonzalez's other trial counsel, but was unsuccessful

until October 2020 due to injuries trial counsel suffered in a car crash. (*Id.* at 21). However, these facts show that counsel did not have a draft of the memorandum done for around a year and a half after she was hired,[3] and did not actually file the state habeas application for another five months even after receiving the version of Barrera's affidavit that was ultimately submitted. This timeline cannot solely be attributed to Barrera. Moreover, obtaining an affidavit from prior counsel is not a prerequisite to filing ineffective-assistance claims in a habeas application. Doing so represents either counsel's strategic decision to strengthen the state filing or simple negligence in failing to recognize the federal habeas deadlines, neither of which represents an "extraordinary circumstance" that entitles Gonzalez to equitable tolling. *See Holland*, 560 U.S. at 651-52.

In short, the record does not show the type of conduct by counsels that the Supreme Court identified to exceed simple negligence and qualify as an extraordinary circumstance, nor the type of action by Gonzalez that the Court found to exemplify petitioner diligence. Gonzalez's actions, both during Barrera's representation and after, more closely resemble the petitioner's in *Manning*, which the Fifth Circuit found insufficiently diligent to warrant equitable tolling. *Manning*, 688 F.3d at 184-87. Even starting only when present counsel was hired, the state application was not filed for almost two and a half years, a period that itself greatly exceeds the one-year limitations period. Gonzalez has, at most, shown a

---

[3] The undersigned is very empathetic to the family health problems that required counsel's attention during this period. However, the affidavit indicates that these occurred in 2017. A draft was not prepared until mid-2018 and the state application was not filed until July 2019. (D.E. 11-31 at 20).

garden variety case of attorney negligence, which remains insufficient to entitle him to equitable tolling.

The undersigned also notes that *pro se* petitioners are held to a high standard in meeting the limitations period for filing their federal habeas petitions. As discussed above, ignorance of the law generally does not excuse prompt filing, even for a *pro se* prisoner. *Felder*, 204 F.3d at 172. Additionally, the failure to satisfy the limitations period must result from "external factors" beyond the petitioner's control, and delays caused by the petitioner do not qualify. *Wilson*, 442 F.3d at 875. Were the court to rule that attorney negligence such as that in this case, absent the aggravating details underlying *Holland*, is an extraordinary circumstance that provides the basis for equitable tolling, this would create a systemically unfair result where petitioners who can afford to hire attorneys would be able to file their petition years late and nonetheless have their claims considered so long as those delays could be attributed to their lawyer's investigation and preparation of their case. Meanwhile, an indigent *pro se* petitioner filing the same petition at the same time would have the petition dismissed as untimely. The Fifth Circuit has recognized as much, stating that "[b]ecause *pro se* petitioners are expected to comply with AEDPA's statute of limitations, it would be unfair to expect less from petitioners who are represented by counsel." *Manning*, 688 F.3d at 185-87. Counseled petitioners are required to exercise due diligence in advancing their claims, the same as *pro se* petitioners. *Id.* This is also supported by *Holland*, where the Supreme Court found it important that the petitioner continued to show personal diligence in working with, and sometimes pushing, counsel to

submit his habeas claims in a timely fashion. *See Holland*, 560 U.S. at 652-53 (finding important that the petitioner routinely wrote letters to counsel informing him of the importance of meeting the federal habeas deadline and that he filed his own federal habeas petition as soon as he discovered that counsel had failed to meet the deadline, among other details). The record here does not show that.

### d. Ineffective Assistance in State Habeas Proceedings

The Supreme Court has held that: "Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Martinez v. Ryan*, 566 U.S. 1, 17 (2012).

Here, as an initial matter, it is of note that the Court's ruling in *Martinez* related to procedural default of claims, not untimeliness. There, the petitioner's counsel filed the equivalent of an *Anders*[4] brief in his state habeas proceedings, conceding that the petitioner had no potential meritorious claims. *Martinez*, 566 U.S. at 18. The Court concluded that, under these circumstances, the petitioner could potentially raise claims that were defaulted in the state habeas proceedings if counsel in the state habeas proceedings was ineffective. *Id.* However, the legal standard for overcoming procedural default is not the same as the legal standard for overcoming untimeliness. In order to overcome a procedural default, a

---

[4] *Anders v. California*, 386 U.S. 738 (1967).

petitioner must show cause for the default and prejudice.  *See id.* at 13-14.  In contrast, the equivalent legal standard that applies to untimely claims is equitable tolling.  Although both standards are equitable in nature, the showing required to establish cause for a procedural default is not the same as the showing required to establish entitlement to equitable tolling, and *Martinez* is therefore not directly applicable to this case.

However, even applying the *Martinez* analysis to this case, to the extent possible, Gonzalez has not established that Barrera's actions prevented him from timely filing his petition.  Specifically, Gonzalez contends that Barrera's delay in finding habeas counsel was equivalent to having no or ineffective counsel in his state habeas proceedings and prevented him from timely filing his ineffective-assistance claims.  However, as noted above, Gonzalez began to work with new habeas counsel by January 2017, and his state habeas application was not filed until July 2019.  Barrera's initial delay in finding new habeas counsel does not explain this additional nearly two-and-a-half year delay.  Moreover, the evidence indicates that Gonzalez's actual habeas counsel was not nonexistent or ineffective, but rather that she conducted a thorough investigation and attempted to file a strong state habeas application on his behalf.  (D.E. 11-31 at 20-21).  In any event, Gonzalez has not raised an ineffective-assistance claim regarding his ultimate state habeas counsel, who continues to represent him in these federal proceedings.

## IV.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."

28 U.S.C. § 2253(c)(1)(A).  Although Gonzalez has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (stating that a district court may *sua sponte* rule on a COA).

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).  Where a district court rejects the claims on procedural grounds, a petitioner must show that jurists of reason would find it debatable whether: (1) the petition states a valid claim of the denial of a constitutional right; and (2) the district court was correct in its procedural ruling.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, reasonable jurists could debate whether Gonzalez has shown circumstances warranting equitable tolling.  Thus, it is recommended that a COA be granted on the following issue:

> Whether the petitioner is entitled to equitable tolling where he relied on trial counsel and habeas counsel to file his state habeas application, but trial counsel delayed finding habeas counsel as promised, and habeas counsel suffered further delays due to multiple circumstances.

## V.   RECOMMENDATION

Based on the foregoing, it is respectfully recommended that Respondent's motion to dismiss (D.E. 12) be **GRANTED** and Gonzalez's § 2254 petition be **DISMISSED** as untimely.  In addition, it is further recommended that any request for a Certificate of Appealability be **GRANTED**.

Respectfully submitted on April 17, 2023.

_____
Julie K. Hampton
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).